UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SIGNAL MUTUAL INDEMNITY                      CIVIL ACTION
ASSOCIATION, LTD., ET AL.

VERSUS

ASBESTOS CORPORATION, LTD.,                  NO.: 15-00633-BAJ-EWD
ET AL.

RULING AND ORDER

Before the Court is the **Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to F.R.C.P. Rule 12(b)(1) and Failure to State a Claim Pursuant to F.R.C.P. Rule 12(b)(6) (Doc. 14)** filed by Defendant Port of Greater Baton Rouge Port Association, also known as Greater Baton Rouge Port Commission. Plaintiffs Signal Mutual Indemnity Association, Ltd., and Baton Rouge Marine Contractors, Inc., filed a memorandum in opposition to the Motion. (*See* Doc. 20). For the reasons explained herein, the Court finds that it does not have subject-matter jurisdiction over this action, and therefore Defendant's Motion is **GRANTED**.

I.  BACKGROUND

While working as a longshoreman, truck loader, and warehouse worker from 1963 to 1999, Louis Genusa, Jr. ("Genusa"), was exposed to asbestos. (Doc. 1 at ¶ 4). *See Genusa v. Asbestos Corp.*, 18 F. Supp. 3d 773, 776 (M.D. La. 2014). Genusa allegedly was exposed to asbestos throughout his career while working for various shipment and transportation companies at the Port of Baton Rouge in Port Allen, Louisiana. (*Id.*). Genusa's last injurious exposure to asbestos allegedly occurred

while he was working for Baton Rouge Marine Contractors, Inc. ("BRMC"). (*Id.* at ¶ 15).

Genusa contracted malignant mesothelioma and passed away on September 18, 2014. (*Id.* at ¶ 12). On November 11, 2014, Genusa's wife filed a claim for death benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, against BRMC. (*Id.* at ¶ 5). As a result, BRMC and its insurer, Signal Mutual Indemnity Association, Ltd. ("Signal") (collectively, "Plaintiffs"), paid benefits under the LHWCA to Genusa's wife. (*Id.*).

Plaintiffs filed this action on September 18, 2015, against thirteen defendants that allegedly "designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold [the] asbestos-containing products" that were the proximate cause of Genusa's injuries. (*Id.* at ¶ 7). Plaintiffs instituted this action to recover the benefits they paid to Genusa's wife under the LHWCA. (*Id.* at ¶ 35). Plaintiffs state causes of action for negligence, strict liability, breach of express or implied warranty, and unjust enrichment. Through the course of these proceedings, Plaintiffs moved to voluntarily dismiss twelve of the thirteen defendants. (*See* Docs. 6, 23). The only remaining defendant is Port of Greater Baton Rouge Port Association, also known as Greater Baton Rouge Port Commission.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a claim is "'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). In order to "prevent[] a court without jurisdiction from prematurely dismissing a case with prejudice," a court should consider a Rule 12(b)(1) motion for lack of subject-matter jurisdiction before addressing any motions that concern the merits of a case. *Id.* at 286-87 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Federal courts have original jurisdiction over any "civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1331(1). For admiralty jurisdiction to attach, a plaintiff "must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The "locality" test "assesses 'whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.'" *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013) (citing *Grubart*, 513 U.S. at 534). The "connection" test requires the Court (1) to "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce" and (2) to "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534 (internal quotation marks and citations omitted).

A review of the Complaint reveals that Plaintiffs filed this action in federal court with the intent of invoking the Court's admiralty jurisdiction.[1] Paragraph four of the Complaint states that "jurisdiction is within the jurisdiction of the Court" and that Genusa was "exposed to asbestos aboard vessels on navigable waters while engaged in the traditional maritime activity of loading and unloading vessels." (Doc.

---

[1] Plaintiffs apparently concede that the Court does not have federal-question jurisdiction or diversity jurisdiction and only argue that admiralty jurisdiction is proper. (*See* Doc. 20).

1 at ¶ 4). Nevertheless, the Court finds that it lacks subject-matter jurisdiction over this matter.

In *Genusa v. Asbestos Corp.*, this Court addressed whether the same underlying facts of Genusa's claims for asbestos exposure satisfied the locality and connection tests. *See* 18 F. Supp. 3d 773. This Court found that Genusa's claims met the locality test, in part, because "he did his stevedoring work both on floating vessels on the Mississippi River, a navigable waterway, and on land." *Id.* at 784. When this Court applied the connection test, however, it found that Genusa was a primarily land-based worker and that "the prospect of injuries to a predominantly land-based worker is less likely to disrupt maritime commerce because such workers are not necessary for ships to operate on the navigable waters." *Id.* at 785-86 (internal quotation marks omitted) (quoting *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011)). As a result, this Court found that it did not have original admiralty jurisdiction over Genusa's claims.

Plaintiffs urge the Court to not follow its prior decision, arguing that the decision was in error due to its reliance on *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455. (*See* Doc. 20 at p. 13).[2] The district court in *Conner* addressed the issue of

---

[2] Plaintiffs contend that the facts of this case more closely resemble the facts in *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178 (D. Haw. 2013). In *Cabasug*, the plaintiff worked as a pipefitter and nuclear engineer at the Pearl Harbor Naval Shipyard, where he spent seventy-five percent of his time on vessels in dry-dock. *Id.* at 1180. The district court concluded that the plaintiff was *not* a predominantly land-based worker because he spent seventy-five percent of his time *aboard* vessels. The district court further found that the asbestos exposure in that case stemmed from products that were manufactured for use on vessels, thereby bearing a substantial relationship to traditional maritime activity. *Id.* at 1190 (citing *Conner*, 799 F. Supp. 2d at 469). Here, there is no evidence that Genusa spent a majority of his time *aboard* vessels, and there is no evidence that the asbestos to which he was exposed was manufactured for use *on* vessels. Contrary to Plaintiffs' assertion, the facts here do not closely resemble the facts in *Cabasug*.

5

admiralty jurisdiction in a consolidated action involving four plaintiffs who alleged that they had suffered asbestos-related injuries as a result of their exposure to asbestos-containing products during their service in the United States Navy. *See* 799 F. Supp. 2d at 458. Three of the plaintiffs were exposed to asbestos while they were assigned to work aboard various vessels, but the fourth plaintiff was exposed to asbestos while employed as a shipyard worker, performing land-based repairs, overhauls, and reinstallations on Navy ships. *Id.* at 459-60. The court concluded that the injuries of the fourth plaintiff – the predominantly land-based worker – did not have a sufficient connection to traditional maritime activity to warrant admiralty jurisdiction. *Id.* at 468.

Similar to the fourth plaintiff in *Conner*, Genusa's work as a stevedore employee was predominantly land-based. Genusa testified that he worked with asbestos cargo in the holds of the vessels, on the dock, in the warehouse, and while loading asbestos onto trucks. (Doc. 14-2 at p. 25, ll. 9-20). On average, vessels transporting asbestos docked once every two months. (Doc. 20-1 at p. 101, ll. 17-21). When a vessel was docked, Genusa would either work on the vessel – unloading asbestos from the holds of the vessel – or on the dock – hauling the asbestos to the warehouse. (Doc. 14-2 at p. 17, ll. 19-25; *id.* at p. 18, l. 1; *id.* at p. 25, ll. 9-20). On average, a vessel was unloaded in two-and-a-half days. (*Id.* at p. 20, ll. 9-15). Once a vessel was unloaded, Genusa's duties were entirely confined to land-based operations until another vessel docked.

Although Genusa occasionally went aboard vessels to unload asbestos cargo, his duties were predominantly land-based. As this Court previously ruled, Genusa's injuries – as a predominantly land-based worker – were less likely to disrupt maritime commerce because the duties he performed are not necessary for ships to operate on the navigable waters. *See Genusa*, 18 F. Supp. 3d at 785-86. Accordingly, the Court adopts its prior reasoning in *Genusa v. Asbestos Corp.*, 18 F. Supp. 3d 773, finding that the Court does not have original admiralty jurisdiction over this matter.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendant the Greater Baton Rouge Port Commission's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to F.R.C.P. Rule 12(b)(1) and Failure to State a Claim Pursuant to F.R.C.P. Rule 12(b)(6) (Doc. 14)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Port of Greater Baton Rouge Port Association, also known as Greater Baton Rouge Port Commission, are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

Baton Rouge, Louisiana, this 13th day of March, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA